UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DARRELL P. SMITH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>)<br>Defendant. ) | Case No. 1:12-cv-00795-TWP-MJD |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Darrell P. Smith ("Mr. Smith") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act ("the Act"). For the reasons set forth below, the Court **REMANDS** the case for further proceedings consistent with this Entry.

### I. BACKGROUND

**A.    Procedural History**

On March 10, 2009, Mr. Smith filed an application for DIB, alleging a disability onset date of September 15, 2002. Mr. Smith's application was denied initially on April 21, 2009, and upon reconsideration on June 5, 2009. Thereafter, Mr. Smith filed a request for a hearing, and a video hearing was held before Administrative Law Judge Robert M. Senander ("the ALJ") on March 29, 2011. Mr. Smith was represented by counsel at the hearing. On March 30, 2011, the ALJ denied Mr. Smith's application. On April 25, 2011, the Appeals Council denied Mr. Smith's request for review of the ALJ's decision, making it the final decision of the

Commissioner for purposes of judicial review. Mr. Smith filed this civil action, pursuant to 42 U.S.C. § 405(g), for review of the ALJ's decision.

**B.     Factual Background**

At the time of the ALJ's decision, Mr. Smith was 36 years old and had completed one year of college. Mr. Smith alleges the following impairments: schizophrenia with auditory, visual hallucinations and depression with vegetative behavior, and problems understanding information. Prior to the alleged onset date, Mr. Smith worked as a marble buffer from 1994 to 2002. Mr. Smith noticed that his "thinking started to change" around the year 2000. He started reading letters from churches and got wrapped up in religion. He was reading about how God could change his life and he was waiting on a miracle. During that same time period, Mr. Smith's intuition started telling him things, including, not to brush his teeth and to eat only orange colored food. In 2002, Mr. Smith had no friends, although he did not have any problems with people at work. He was also fired from his job as a marble buffer that year. In 2003, in an attempt to become independent, Mr. Smith became voluntarily homeless until April 2008. During his period of homelessness, Mr. Smith stayed at various missions in Indianapolis. One mission in particular, Horizon House, offered therapy with doctors from Midtown Community Mental Health Center ("Midtown"), but Mr. Smith did not participate.

Mr. Smith's mother, Wilma Royston ("Ms. Royston") testified at his hearing that she only saw her son once between 2003 and April 2008. Ms. Royston also testified that prior to 2002, Mr. Smith was employed, lived in an apartment by himself and did well.

In February 2005, Mr. Smith was seen by a Licensed Social Worker ("LSW") at Midtown at the request of a criminal court judge. The Judge noted that Mr. Smith seemed vague and confused, and had an anger problem. During the session, Mr. Smith said he was angry

because someone had made a homosexual advance toward him during a Thanksgiving dinner for Veterans and he was confused about the paperwork presented to him. The LSW did not make a diagnosis at the time. Mr. Smith did not seek treatment again until 2008.

On May 30, 2008, Mr. Smith saw Dr. Dennis Anderson ("Dr. Anderson") at Gallahue Mental Health Services for purposes of determining disability. Dr. Anderson diagnosed Mr. Smith with paranoid schizophrenia which manifests with his inability to be around people and assigned him a Global Assessment of Functioning ("GAF") of 45, indicating marked or extreme limitation in social functioning, concentration, persistence, or pace. Dr. Anderson noted that Mr. Smith had a flat affect, poor adult daily living skills, disorganized behavior, and did not manage money well. Dr. Anderson stated that the duration of the illness would extend indefinitely. On April 21, 2009, Mr. Smith's case was under psychiatric technique review by Kenneth Neville, Ph.D ("Dr. Neville"). Dr. Neville determined the evidence was insufficient to evaluate a medical disposition. Dr. F. Kladder affirmed Dr. Neville's decision on June 5, 2009.

During June 2009, Mr. Smith was evaluated by social worker April Borders at his home for family therapy. Ms. Borders noted that Mr. Smith did not watch television in the home because it spoke to him. Mr. Smith also exhibited obsessive compulsive behavior, like washing his hands repeatedly and constantly cleaning his shoes. On November 17, 2010, Dr. Anderson recommended that Mr. Smith not work because engaging in substantial activity would increase Mr. Smith's obsessive compulsive behaviors and symptoms of paranoia. Additional facts will be addressed below as necessary.

## II. DISABILITY AND STANDARD OF REVIEW

In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate,

parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citation in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors.  20 C.F.R. §416.920(a)(4)(i).  At step two, if the claimant does not have "severe" impairment (i.e. one that significantly limits his ability to perform basic work activities) that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).  In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity, which is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 4040.1545(a)(1); SSR 96-8p).  At step four, if the claimant is able to perform his past work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At

4

step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v).  When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step.  *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred.  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome."  *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence.  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ determined that Mr. Smith last met the insured status requirements of the Act on December 31, 2007.  The ALJ found that Mr. Smith satisfied step one of the disability analysis

5

since he was not engaged in substantial gainful activity during the period of his alleged onset date, September 15, 2002, through his date last insured, December 31, 2007. Finally, the ALJ found that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment so Mr. Smith was not disabled as defined by the Act from September 15, 2002 through December 31, 2007.

## IV. DISCUSSION

Mr. Smith raises two issues on appeal. First, Mr. Smith argues that the ALJ's determination that his paranoid schizophrenia with GAF assessment of 45 did not meet or medically equal listing 12.03 before his date last insured, was not supported by substantial evidence. Second, Mr. Smith argues that the ALJ should have summoned a medical advisor to testify as to whether or not his symptoms met or medically equaled any listed impairment before his date last insured.

"[A]n ALJ is required to apply the analysis outlined by Social Security Ruling 83-20 ("SSR 83-20") to determine the onset date of an applicant's disability even though he is not required to specifically refer to the ruling in his decision." *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005); *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The onset date of disability is defined as "the first day an individual is disabled as defined in the Act and regulations." *Briscoe*, 425 F.3d at 352 (quoting SSR 83-20, at *1, 1983 WL 31249 (Jan. 1, 1983)). The onset date must often be inferred with slowly progressing impairments, especially when adequate medical records are not available. *Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999). "[T]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in

death." *Briscoe*, 425 F.3d at 352 (citing *Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir.1998)) (quoting SSR 83–20, at *3).

"In order to establish the onset date of a disability, the ALJ is to consider: (1) the claimant's allegations as to the onset date; (2) the date that the claimant left work; and (3) medical evidence of onset." *Henderson*, 179 F.3d at 512-13 (citations omitted). "Medical evidence is the most important factor, and the chosen onset date must be consistent with it." *Id.* at 513; SSR 83-20, at *2. "At the hearing, the ALJ should call on the services of a medical expert to help in making the necessary inferences, unless the claimant's medical history is complete." *Briscoe*, 425 F.3d at 352 (internal punctuation omitted); *Henderson*, 179 F.3d at 513. The lack of medical evidence does not destine a claim to fail. *Briscoe*, 425 F.3d at 353. "Because mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset, development should be undertaken in such cases to ascertain the onset date of the incapacitating impairment." SSR 83-20, at *5. "Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." *Lichter v. Bowen*, 814 F.2d 430, 435 (7th Cir. 1987); *see Briscoe*, 425 F.3d at 353.

Mr. Smith acknowledges there is little evidence in the record prior to December 2007 and his history for medical and psychiatric treatment is sporadic at best. Mr. Smith's case most closely resembles *Lichter*, the leading case under this analysis. In *Lichter*, the claimant suffered from a severe mental impairment for several years, but it was not diagnosed until two years after his date last insured. 814 F.2d at 430. Just like in Mr. Smith's case, the ALJ accepted the later medical diagnosis but refused to consider Mr. Lichter's allegations concerning the onset date

because the record did not contain any medical evidence for the relevant time period. *Id.* at 435. The Court vacated and remanded the ALJ's decision, reasoning that the ALJ's onset date determination might have been different if he had applied the required SSR 83-20 analysis. *Id.* at 436. This Court is inclined to do the same.

Turning to Mr. Smith's case, the ALJ erred when he failed to apply the required SSR 83-20 analysis to Mr. Smith's claim. Even though the ALJ accepted Dr. Anderson's May 2008 diagnosis of schizophrenia, he denied Mr. Smith's claim because there was a lack of medical evidence to prove the onset of the disability occurred before the date last insured. Dkt. 13 at 16. As stated earlier, the lack of medical evidence is not fatal to a claim when the onset date has to be inferred. The ALJ could have relied on the evidence in the record to determine an onset date, such as Mr. Smith's own testimony and that of his mother regarding when she believed the impairment was onset. There is also evidence in the record that Mr. Smith appeared angry, vague, and confused in 2005 when he appeared in court and was referred to Midtown Mental Health Center for evaluation. Dkt. 13 at 86. Although no diagnosis was made, this evidence seems like more than a cursory note as it was referred to by the ALJ. *See* Dkt. 13 at 16. With the assistance of a medical expert the ALJ would have likely been able to look at the totality of the evidence to determine if and at what point the schizophrenia became severe enough to prevent Mr. Smith from engaging in substantial, gainful activity for a continuous period of at least 12 months.

Accordingly, this case should be remanded so that the ALJ can re-evaluate the evidence under the proper SSR 83-20 analysis. The ALJ should consider Mr. Smith's testimony regarding the onset of his disability and the date that Mr. Smith left work. The ALJ should seek the advice of a medical expert to help make the necessary inferences and develop a more thorough record

since Mr. Smith's medical history is not complete. He should also consider the testimony of Mr. Smith's mother, stepfather, and others who can help establish the onset of the disability.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **VACATED**, and this case is **REMANDED** for proceedings consistent with this Entry.

**SO ORDERED.**

Date: 09/20/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
OFFICE OF THE UNITED STATES ATTORNEY
tom.kieper@usdoj.gov